UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KITTY KNAPP, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 754 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EVGEROS, INC. d/b/a Olympic Star Restaurant, | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| TIMOTHY A. CASWELL, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 7516 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum Opinion and Order

Kitty Knapp and Timothy A. Caswell, each represented by Attorney Jason R. Craddock, Sr., seek relief under Federal Rules of Civil Procedure 59(e) and 60(b) from judgments entered against them in these two cases. 15 C 754, Doc. 109; 15 C 7516, Doc. 63. The motions, materially identical and thus capable of resolution in a single opinion, are denied.

### Background

**A.** **Knapp v. Evgeros, Inc., No. 15 C 754**

Knapp sued her former employer, Evgeros, Inc., alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Illinois Human Rights Act

1

("IHRA"), 775 ILCS § 5/1-101 *et seq.* 15 C 754, Doc. 1-1. Evgeros moved for summary judgment on March 31, 2016, and the court set a briefing schedule requiring Knapp to respond by May 13, 2016. 15 C 754, Docs. 57, 61. At 11:57 p.m. on May 13, Craddock moved for an extension. 15 C 754, Doc. 64. The court granted the extension and set a new briefing schedule requiring Knapp to respond by June 3, 2016, but it warned that "no further extensions" would be granted "absent extraordinary circumstances." 15 C 754, Doc. 66.

Instead of filing the response on June 3, Craddock again moved for an extension—this time at 11:53 p.m. 15 C 754, Doc. 67. Again, the court granted the motion, pushing the deadline back to June 6, and again it warned that there would be "no further extensions absent extraordinary circumstances." 15 C 754, Doc. 69. Craddock missed the June 6 deadline as well, but this time waited until June 9 to ask for a third extension. 15 C 754, Doc. 72. Even so, the court granted the request and set yet another briefing schedule, this time requiring Knapp to respond by June 14, and Evgeros to reply by June 28. 15 C 754, Doc. 74. The court also warned that "[n]o further extensions for the response papers will be granted." *Ibid*.

Craddock filed Knapp's summary judgment response on June 14, including a brief opposing summary judgment, a Local Rule 56.1(b)(3)(B) response to Evgeros's Local Rule 56.1(a)(3) statement, and a Local Rule 56.1(b)(3)(C) statement. 15 C 754, Docs. 75-76. Those filings were defective in various ways. For one, the Local Rule 56.1(b)(3)(C) statement at times cited whole deposition transcripts without specifying page or line numbers. 15 C 754, Doc. 75 at 3-4 ¶ 13; *see Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) ("It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to *know* what portion of a witness's testimony the party is invoking so that it can focus its attention on that testimony and

assess whether it is admissible and actually supports the fact or inference for which it is cited."); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (affirming the district court's decision to disregard Local Rule 56.1 responses on the ground that they "cited an entire deposition transcript rather than specific page references"). Craddock also attached evidentiary materials that his papers did not cite at all, and the brief contained no citations to the record, the Local Rule 56.1(b)(3)(B) response, or the Local Rule 56.1(b)(3)(C) statement. 15 C 754, Docs. 76, 79.

On June 28, 2016, the day that Evgeros's reply was due, Craddock filed what purported to be "corrected" versions of Knapp's brief, Local Rule 56.1(b)(3)(B) response, and Local Rule 56.1(b)(3)(C) statement. 15 C 754, Docs. 83-84. The court immediately struck both filings on the ground that they were untimely and had been filed without leave of the court. 15 C 754, Doc. 85. Later that day, Craddock moved for leave to file *instanter* those documents. 15 C 754, Doc. 86. The court denied that motion on these grounds:

> It is best to consider Knapp's motion for leave to file *instanter* amended summary judgment response papers as a request for another extension of time to file her summary judgment responses. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883 (7th Cir. 2012) (treating a late motion for leave to file *instanter* a summary judgment response as a motion to extend the deadline for filing the response). Rule 6(b)(1)(B) provides that when a party moves to extend a deadline that has already passed, the court should deny the motion unless the movant can show that her failure to meet the deadline was the result of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see Hassebrock v. Bernhoft*, 815 F.3d 334, 341 (7th Cir. 2016) ("Rule 6 provides that when a request for extension of time is made *after* an expired deadline, 'the court may, for good cause, extend the time … if the party failed to act because of excusable neglect.'"). The determination whether a party's neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993) (interpreting a parallel provision of the Federal Rules of Bankruptcy Procedure); *see also Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (applying *Pioneer*'s definition of "excusable neglect" to Civil Rule 6(b)(1)(B)); *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015)

3

(same); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). Relevant circumstances include "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395; *see also Peters v. Wal-Mart Stores E., LP*, 512 F. App'x 622, 628 (7th Cir. 2013); *Raymond*, 442 F.3d at 606. The "[m]ost important" of those factors is "the reason for the delay"; if the moving party fails to demonstrate "genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline," she cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party. *Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701, 707 (7th Cir. 2014). A party is "accountable for the acts and omissions of [her] attorneys." *Pioneer*, 507 U.S. at 396-97; *see also Moje v. Fed. Hockey League, LLC*, 792 F.3d 756, 758 (7th Cir. 2015) ("[A] lawyer's errors are imputed to the client for the purpose of [excusable neglect].").

Knapp has not shown that her delay was the result of excusable neglect; her motion states only that her attorney, Jason Craddock, "noticed" various errors in the original response papers. Doc. 86 at ¶¶ 2-4. That Craddock simply took too long to notice the mistakes in her original filings is a weak enough excuse by itself, but it is actually no excuse at all given that the court identified the mistakes in open court, with Craddock present, on June 23, five days earlier. Yet instead of taking immediate action on June 23 or perhaps the next day, Knapp waited a full five days to clean up the mess, until the very day Evgeros was to file its reply. Because Knapp has not demonstrated any "genuine ambiguity or confusion about the scope or application of the rules" or any "other good reason for missing the deadline," she cannot establish excusable neglect. *Satkar Hospitality*, 767 F.3d at 707.

The fact that Knapp offers no excuse by itself establishes that the court should deny her motion. Still, for the sake of completeness, it is worth pointing out that the other *Pioneer* factors do her no help either. The first *Pioneer* factor is danger of prejudice to the non-movant. Knapp insists that allowing her late filings will not prejudice Evgeros, and in fact will actually "make it easier for [Evgeros] to reply to Plaintiff's response." Doc. 86. Maybe that would have been true if Knapp had filed her motion earlier—say, on June 23, the day that Craddock was warned that Knapp's response papers were deficient, or perhaps a day later. Then Evgeros would have had time to take Knapp's new filings into account when preparing its reply. But instead, Knapp waited until the day that the reply was due, with the result that Evgeros wrote a reply to the filings that she now hopes to amend. Granting Knapp's motion would force Evgeros to spend time and money writing yet another reply. Knapp's delay has prejudiced Evgeros.

4

> The second *Pioneer* factor—"the length of the delay and its potential impact on judicial proceedings"—also weighs against Knapp. She inexcusably waited five days to attempt to fix her deficient response papers, and allowing her to file her amended response on the day Evgeros's reply was due would have pushed back the schedule even further than it had already been pushed. The fourth factor—whether the movant acted in good faith—weighs against Knapp as well. Inattention is not a new problem for Knapp and her counsel in this case. Craddock twice failed to appear for status hearings. Docs. 28, 44. Evgeros had to file a motion to compel discovery when one of Knapp's designated witnesses, June Miller—who also happened to be a client of Craddock's in a related suit against Evgeros—failed to appear for a noticed deposition. Doc. 36. Evgeros moved under Rule 37(a)(5) for an order requiring Knapp to pay the expenses it incurred in litigating the motion to compel; Knapp missed the first deadline to respond to the motion, the magistrate judge granted Knapp's retroactive motion for an extension, and then Knapp missed the second deadline as well. Docs. 46, 48, 50, 55, 62. As noted, the court extended the summary judgment response deadline three times—twice as the result of requests made at the eleventh hour, and once as the result of a request made three days after the deadline had passed. Docs. 66, 69, 74. Knapp also blew the deadline to file a response to Evgeros's motion to strike; Knapp's motion for leave to file the untimely response *instanter* asserts that Craddock was unable to file the response on time because he had to "retrieve a lost wallet." Docs. 82, 90.
>
> The court is done accommodating Knapp's disdain for and/or inexcusable inability to abide by the schedule, particularly given the accommodations she has already received. Knapp's motion for leave to amend her response brief and Local Rule 56.1 filings is denied. *See Flint*, 791 F.3d at 768 ("[C]ase management depends on enforceable deadlines … . In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines.") (internal quotation marks omitted); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) ("Rule 6(b) … clearly gives courts both the authority to establish deadlines and the discretion to enforce them."); *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) ("The district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action. … Necessarily, they must have substantial discretion as they manage their dockets."); *Shine v. Owens-Ill., Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("[J]udges must be able to enforce deadlines.") (internal quotation marks omitted). Given this ruling, and the fact that the exhibits that Evgeros seeks to strike are not cited by Knapp's response papers or are otherwise immaterial, Evgeros's motion to strike is denied as moot, as is Knapp's motion for leave to file *instanter* a response to that motion.

205 F. Supp. 3d 946, 951-53 (N.D. Ill. 2016). The court proceeded to evaluate the merits of Evgeros's summary judgment motion and concluded that no reasonable jury could return a

verdict in Knapp's favor on any of her claims. *Id*. at 954-60. Judgment was entered in favor of Evgeros and against Knapp. 15 C 754, Doc. 99.

B.  **Caswell v. Wal-Mart Stores, Inc., No. 15 C 7516**

Caswell sued his former employer, Wal-Mart Stores, Inc., alleging tortious interference with a contract as well as violations of the ADA, the ADEA, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. 15 C 7516, Doc. 1. During discovery, Craddock failed to respond to Wal-Mart's discovery requests after having been given a twenty-one-day extension and a further seven-day extension. 15 C 7516, Doc. 37 at 1-2. Wal-Mart then filed a motion to compel those discovery responses. 15 C 7516, Docs. 36-37. On May 31, 2016, the Magistrate Judge granted that motion and ordered Caswell to provide his responses within five days. 15 C 7516, Doc. 40. Wal-Mart filed a second motion to compel on July 20, stating that Caswell still had not obeyed the discovery order. 15 C 7516, Docs. 46-47. The Magistrate Judge granted that motion on July 27, again ordering Caswell to "provide full responses" to Wal-Mart's discovery requests. 15 C 7516, Doc. 51. In the meantime, Craddock failed to appear at a status hearing before the District Judge on July 6. 15 C 7516, Doc. 45. The court entered an order that day, stating: "Plaintiff did not appear. If Plaintiff fails without good cause to appear at the 9/7/2016 status hearing or any future motion or status hearing, this case will be dismissed with prejudice for want of prosecution." *Ibid*.

On August 29, Wal-Mart moved to dismiss the case for lack of prosecution. 15 C 7516, Doc. 57. Wal-Mart recounted:

> On August 9, 2016, the parties attended a status conference before Magistrate Judge Valdez. As of that date, Plaintiff had provided only a portion of the information responsive to Walmart's Discovery Requests. Plaintiff's counsel stated during the status conference that he would provide the remaining information, including Plaintiff's updated discovery responses, by the end of the day. To date, Plaintiff has failed to do so. Walmart had previously

6

> noticed Plaintiff's deposition for July 12, 2016, but was forced to postpone the
> taking of Plaintiff's deposition due to Plaintiff's failure to comply with his
> discovery obligations.

*Id*. at 2. On August 30, Craddock failed to appear for a scheduled status hearing before the Magistrate Judge. 15 C 7516, Doc. 59. Craddock then failed to appear before the District Judge for the scheduled September 7 status hearing and for the simultaneous hearing on Wal-Mart's motion to dismiss for failure to prosecute. 15 C 7516, Doc. 60. The court stated on the record:

> We're here on the defendant's motion to dismiss for failure to prosecute the case. And there are a variety of discovery issues that are discussed. I'm not going to rely on those because the Magistrate Judge was dealing with those. I'm going to grant the motion nonetheless, though. Mr. Craddock did not appear for a July 6th hearing, and in that order, I stated if plaintiff fails without good cause to appear at the September 7th hearing, which is today, or any future motion or status hearing, the case will be dismissed with prejudice for want of prosecution. Mr. Craddock did not appear at the August 30 hearing in front of Magistrate Judge Valdez, so that alone would warrant dismissal with prejudice for want of prosecution because you've got to show up and prosecute your case if you're the plaintiff or the plaintiff's attorney. And now we have a second time. So, I think the court's been more than patient with plaintiff's counsel. This is the third time he hasn't shown up. There was a warning after the first time. So, I'm going to grant the motion to dismiss with prejudice for want of prosecution.

The court dismissed the case with prejudice, entered judgment in favor of Wal-Mart, and closed the case. 15 C 7516, Docs. 60-61.

## Discussion

On behalf of Knapp and Caswell, Craddock moves for relief under Rules 59(e) and 60(b), urging the court to vacate the judgments against them and to vacate the denial of Knapp's motion for leave to correct her summary judgment filings. In both cases, Craddock argues that he failed to follow the scheduling orders and appear in court because he "suffers from Attention Deficit Disorder (ADD), made more severe by his inability for years to take effective medication due to a long-standing heart condition (atrial fib)." 15 C 754, Doc. 109 at 2; 15 C 7516, Doc. 63 at 2. He adds:

7

> The effects of ADD include extreme difficulty with being on time, remembering and/or correctly noting court dates and times (resulting in frequently missing or being tardy to court appearances, for which the undersigned apologizes to the Court and opposing counsel, and stresses that this was NEVER willful on the undersigned's part) and meeting deadlines, and this is exacerbated by the fact that the undersigned is lead counsel in over 40 cases with no support staff at this time—and is actively seeking to reduce this caseload—and has had to complete a more than substantial and concentrated amount of briefing and discovery in the last several months and continuing, as well as several trials and court appearances and settlement conferences.

*Ibid*.

## I.     Rule 59(e)

Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). The Rule "allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 852 (7th Cir. 2010) (internal quotation marks omitted); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (defining a "manifest error" as the "wholesale disregard, misapplication, or failure to recognize controlling precedent."). A Rule 59(e) motion "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citation omitted); *see also Egonmwan*, 602 F.3d at 852 ("[M]otions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier."); *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (same). Nor does Rule 59(e) "provide a vehicle for a party to undo its own procedural failures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Craddock does not (and could not) argue that the existence of his ADD constitutes newly discovered evidence. Rather, he contends in *Caswell* that the dismissal for want of prosecution

8

was a manifest error of law because the court failed to provide the requisite warning before it dismissed the case. 15 C 7516, Doc. 63 at 4; *see Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (holding that "there must be an explicit warning before the case is dismissed" for want of prosecution). He is mistaken. As noted, the court's July 6, 2016 minute order stated: "If Plaintiff fails without good cause to appear at the 9/7/2016 status hearing or any future motion or status hearing, this case will be dismissed with prejudice for want of prosecution." 15 C 7516, Doc. 45. Craddock then failed without good cause to appear at the scheduled August 30 *and* September 7 status hearings. 15 C 7516, Docs. 59-60. The court made no legal error in dismissing the case for want of prosecution at that point.

In *Knapp*, Craddock does not even attempt to demonstrate that *the court* made a manifest error of law in denying his motion for leave to correct his summary judgment filings. He instead acknowledges *his* errors, contends that they were caused by his ADD, and opines that they "certainly should not be attributable to Plaintiff, and really should not be attributed to Plaintiff's counsel either." 15 C 754, Doc. 109 at 3-4. In other words, he uses this motion as "a vehicle … to undo [his] own procedural failures"—a path that Rule 59(e) forecloses. *Moro*, 91 F.3d at 876.

Craddock also asserts that that the court incorrectly granted Evgeros's summary judgment motion, frivolously contending that "[a]ll of Plaintiff's statements of additional facts raise genuine issues of material fact … ." 15 C 754, Doc. 109 at 5. Craddock appears to be arguing that that the summary judgment ruling amounted to a "manifest error of law"—*i.e.*, a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *See Oto*, 224 F.3d at 606. If so, the court reaffirms the rationale articulated in its opinion. 205 F. Supp. 3d at 954-60.

## II. Rule 60(b)

Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"[R]elief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009); *see also Kathrein v. City of Evanston*, 752 F.3d 680, 690 (7th Cir. 2014); *Willis v. Lepine*, 687 F.3d 826, 833 (7th Cir. 2012). "[T]he grounds for relief under Rule 60(b) are more limited than those for relief under Rule 59(e)," *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003), and "must be something that could not have been used to obtain a reversal by means of a direct appeal," *Kiswani v. Phx. Sec. Agency, Inc.*, 584 F.3d 741, 743 (7th Cir. 2009). Most circumstances that qualify for Rule 60(b) relief involve "factual information that comes to light only after the judgment, and could not have been learned earlier." *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002). Improper grounds for relief under Rule 60(b) include "legal error" and a "contention that the judge erred

10

with respect to the materials in the record." *Ibid.*; *see also Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002) ("A legal error by the district court is not one of the specified grounds for such a motion. In fact it is a forbidden ground … ."). "[C]ounsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief." *Dickerson v. Bd. of Educ. of Ford Heights*, 32 F.3d 1114, 1118 (7th Cir. 1994). Ultimately, "[t]he district court has great latitude in making a Rule 60(b) decision because that decision is 'discretion piled on discretion.'" *Traditional Baking*, 570 F.3d at 848.

Craddock's motions do not expressly invoke any specific subsection of the Rule, but his argument appears to be that his failures in both cases constitute "mistake" or "excusable neglect" under Rule 60(b)(1) due to his high caseload and ADD. As the court noted in its opinion in *Knapp*, the determination whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395; *see also Raymond*, 442 F.3d at 606 ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). The "[m]ost important" factor to be considered is "the reason for the delay"; if the moving party fails to demonstrate "genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline," he cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party. *Satkar Hospitality*, 767 F.3d at 707. Craddock has failed to make the required showing.

The Seventh Circuit has repeatedly held that "neglect due to a busy schedule is not excusable." *Keeton*, 667 F.3d at 883; *see also Williams v. Shinseki*, 373 F. App'x 611, 614-15 (7th Cir. 2011) (holding that an attorney's "busy case schedule" did not constitute excusable neglect under Rule 60(b)(1)); *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006)

11

(same, and collecting cases). The same is true for medical conditions that are not truly incapacitating. *See Zachary v. Aramark Corr. Servs., LLC*, 464 F. App'x 547, 547-48 (7th Cir. 2012) (affirming the district court's determination that a *pro se* litigant's excuses of "extreme fatigue, loss of memory and concentration, and crying fits" failed to demonstrate the "exceptional circumstances to justify relief" under Rule 60(b)(1)); *Keeton*, 667 F.3d at 883 (holding that a "medical emergency" resulting in a broken arm that impaired an attorney's "ability to type pleadings" did not constitute excusable neglect); *Dickerson*, 32 F.3d at 1118 (affirming the denial of a Rule 60(b) motion where "nothing in the record … would lend any support to counsel's claim that he himself was incapacitated for a period of months," and rejecting the attorney's argument "that a severe case of laryngitis also impeded him from attending to the case").

By Craddock's own description, his ADD was not truly incapacitating; rather, he says that it caused "extreme difficulty" with time management. 15 C 754, Doc. 109 at 2; 15 C 7516, Doc. 63 at 2. Difficulty with time management is not incapacitating; indeed, Craddock attaches with approval an excerpt from an ADD-focused website stating that ADD symptoms may be mitigated and addressed by "*set[ting] a timer*," "*put[ting] on high-energy music*," "*hir[ing] a friend*," and "*chang[ing] up the view*." 15 C 754, Doc. 114 at 3; 15 C 7516, Doc. 65 at 3 (emphases in original). The utter simplicity and feasibility of those remedial measures—of which Craddock was clearly aware, as he himself brought them to the court's attention—means that he was capable of taking the steps that would have allowed him to manage his ADD and thereby to abide by the scheduling orders and to appear in court. This case therefore does not present the "exceptional circumstances" necessary for relief under Rule 60(b). *Traditional Baking*, 570 F.3d at 848.

Urging the opposite conclusion, Craddock cites *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.*, 461 F.2d 40 (7th Cir. 1972), where the Seventh Circuit held that an attorney's "failure to file an answer with the court was attributable to 'mistake' and 'excusable neglect' within the meaning of Rule 60(b)." *Id*. at 43. In that case, an attorney based in New York mailed his client's answer to opposing counsel rather than filing it with the district court clerk, a procedure that would have complied with the rules in New York but not in the district where the case was filed. *Id*. at 41-42. The attorney later filed an affidavit stating "that he was mistaken as to the necessity of filing an answer with the court because of 'the wording of the summons, the Rules,' and more importantly, his 'experience in the State of New York.'" *Id*. at 43. The Seventh Circuit found this explanation persuasive "[i]n view of all the circumstances" of that case. *Ibid*.

By contrast to the circumstances in *A.F. Dormeyer*, Craddock has not averred—and could not credibly aver—that he was genuinely mistaken about the necessity of appearing in court for scheduled hearings, filing documents on time, or following Local Rule 56.1. Craddock thus has failed to demonstrate the "genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline[s]" necessary for relief under Rule 60(b)(1). *Satkar Hospitality*, 767 F.3d at 707; *see also Shinseki*, 373 F. App'x at 616 ("We are not insensitive to attorneys' health issues, but Andry's habitual failures have eliminated any credibility for his chronic requests. Like the trial court, we have [reached the] point of saying that enough is enough. Courts cannot operate without setting and enforcing deadlines, and this order should put both Andry and his clients on notice that we intend to fully enforce those deadlines in the future.") (internal quotation marks and citation omitted); *Easley v. Kirmsee*, 382 F.3d 693, 699 (7th Cir. 2004) ("We hold that the trial judge properly exercised his discretion

when he denied Easley's Rule 60(b) motion and declined to vacate his grant of summary judgment in favor of the defendants. The trial judge was entitled to expect Easley and her counsel to comply with his clear and straightforward pretrial scheduling orders and filing deadlines, and when compliance was not forthcoming, the trial judge was empowered to end the litigation by ruling on the merits of the [motions]. We refuse to tie the trial judge's hands and take away one of the tools necessary to enforce his scheduling orders and organize his trial calendars.").

"[O]ffering explanations for dilatory conduct only after judgment had been granted does not demonstrate the diligence or extraordinary circumstances necessary to invoke Rule 60(b)," *Dickerson*, 32 F.3d at 1118 (brackets and internal quotation marks omitted), and that is precisely what Craddock has done here. This conclusion would stand regardless of whether his motions are construed as invoking the Rule 60(b)(6) "catchall" provision in addition to Rule 60(b)(1). *See Easley*, 382 F.3d at 699 n.5 ("Easley's alternate request for relief, under Rule 60(b)(6)'s catchall provision, for 'any other reason justifying relief from the operation of the judgment,' is unavailable when attorney negligence is at issue. Thus we do not address this argument.") (internal citation omitted); *Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997) (characterizing Rule 60(b)(6) as an "even more highly circumscribed exception in [a] rule already limited to exceptional circumstances.").

## Conclusion

"Relief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). For the foregoing reasons, these cases are not exceptional. Craddock's motions therefore are denied. This result is unfortunate for Knapp and Caswell; at this point, however, their remedy lies, if at all, not against

14

Evgeros or Wal-Mart, but against Craddock. "When lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation." *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015); *see also Traditional Baking*, 570 F.3d at 849 ("Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary.").

August 21, 2017

United States District Judge